IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD D. GRANGER #B-24617,

       Plaintiff,

-Vs-

DOCTOR ZAIRE; DOCTOR ALONSA;
DOCTOR McFADDEN; OFFICER TRAVIS
M. RAUCH; EMPLOYEE McCLUSKEY;
GREGORY LIPE; and; LEANNA J.
WILLIAMS,

       Defendants.

No. 08 C. 39

Judge Robert M. Dow, Jr.

RECEIVED
7-28-2008
JUL 2 8 2008 MB

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## AMENDED COMPLAINT

JURISDICTION

    1.    The jurisdiction of the Court is invoked pursuant to the
Civil Rights Act, 42 U.S.C. Sec. 1983 et seq.; the judicial code, 28
U.S.C. Sec. 1331 and 1343(a); the Constitution of the United States;
and pendent jurisdiction, as codified in 28 U.S.C. Sec. 1367(a).

PARTIES

    2.    Plaintiff, **Ronald D. Granger #B-24617** is a 45 year old
African-American man, a citizen of the United States, and is currently
incarcerated in the Stateville Correctional Center, P.O. Box 112,
Joliet, Illinois 60434-0112.

    3.    Defendant, **DOCTOR ZAIRE**, is employed in the Health Care Unit
Hospital at Graham Correctional Center, P.O. Box 500, Hillsboro, Illinois
62049 and engaged in the conduct complained of in the course and scope
of his employment, and is sued in both his Official and individual
capacity.

    4.    Defendant **DOCTOR ALONZA**, is employed in the Health Case Unit
Hospital at Graham Correctional Center, P.O. Box 500, Hillsboro, Illinois

62049 and was over Dialysis  and engaged in the conduct complained
of in the course and scope of his employment, and is sued in both his
Official and individual capacity.

5.   Defendant **DOCTOR McFADDEN**, is employed in the Health Care
Unit Hospital at Stateville Correctional Center, P.O. Box 112, Route
53, Joliet, Illinois 60434-0112 and engaged in the conduct complained
of in the course and scope of his employment, and is sued in both his
Official and individual capacity.

6.   Defendant **OFFICER TRAVIS M. RAUCH**, Is employed as a
Correctional Officer at Granham Correctional center, P.O. Box 500,
Hillsboro, Illinois 62049 and engaged in the conduct complained of in
the course and scope of his employment, and is sued in both his Official
and Individual Capacity.

7.   Defendant **EMPLOYEE McCLUSKEY** Is employed as a Server/Investigator
for the Adjustment Committee at Graham Correctional Center, P.O. Box 500,
Hillsboro, Illinois 62049 and engaged in the conduct complained of in
the course and scope of his employment and is sued in both his Official
and individual capacity.

8.   Defendant **GREGORY LIPE** Is employed as a Chairperson of the
Adjustment Committee at Graham Correctional Center, P.O. Box 500,
Hillsboro, Illinois 62049 and engaged in the conduct complained of in
the course and scope of his employment and is sued in both his Official
and individual capacity. And,

9.   Defendant **LEANNA J. WILLIAMS**, Is employed as an Adjustment
Committee Member at Graham Correctional Center, P.O. Box 500, Hillsboro,
Illinois 62049 and engaged in the conduct complained of in the course
and scope of her employment and is sued in both her Official and
individual capacity.

## FACTS

10.    In late July 2006 Plaintiff's Left-Leg was 'Swollen-up' very badly. Plaintiff requested to see a Doctor at Graham Correctional Center after being seen by a nurse on Sick-Call. Plaintiff thereafter was scheduled to see a Doctor.

11.    The next day, Plaintiff's leg was swollen as big as a Basket-ball, and Plaintiff told his Housing Unit Officer that it was an "Emergency". The Officer agreed after seeing Plaintiff's leg.

12.    The Unit Officer Called a Nurse and when the nurse arrived at the Housing Unit Plaintiff was placed in a Wheelchair and taken to the Health Care Unit Hospital.

13.    After arriving at the Graham Correctional Center Health Care Unit Hospital, Plaintiff was seen by Doctor Zaire.

14.    After Doctor Zaire did a preliminary examination, He Ordered an I.V. for Plaintiff, and assigned plaintiff to the Health Care Unit.

15.    The following day, Doctor Zaire again examined Plaintiff and noted that Plaintiff's leg was swollen even larger, and ordered that Plaintiff be taken to (Hillsboro Hospital) for a "Sinagram".

16.    On the Fourth Day Plaintiff was taken to Hillsboro for his 'first' "Sinagram" where allegedly nothing was discovered.

17.    On the fifth Day Plaintiff was again examined by Doctor Zaire, the Plaintiff's Left Leg continuing to Swell even larger. Doctor Zaire again Ordered that Plaintiff be taken back to (Hillsboro Hospital) for a Second Sinagram.

18.    This same day, Plaintiff was again taken to Hillsboro Hospital where a "Second-Sinagram" was completed, and again allegedly

nothing was discovered irregardless of the "Massive Swelling" of Plaintiff's Left leg that was extremely painful to bear.

19.    After the Second-Sinagram, Plaintiff was returned to Graham Correctional Center and remained again over-night in the Health Care Unit until the Seventh day when Plaintiff was again examined by Doctor Zaire.

20.    After Doctor Zaire again examined Plaintiff, noting that Plaintiff's leg was swollen even larger and plaintiff was experiencing excruciating pain, Doctor Zaire Ordered that Plaintiff be immediately taken to (St. John's) Hospital in Springfield, Illinois.

21.    Plaintiff was taken to St. John's Hospital in Springfield Illinois and placed in I.C.U. where the Physicians placed Plaintiff on Thorazine and other Mind-Altering medications for pain which totalled approximatly (15)-Pills a day which caused Plaintiff loss of body control and placed him in a dream state causing hulicinations while being tested and examined until those physicians determined that Plaintiff was losing a great amount of Blood, and that Plaintiff's left leg had an absest and required Surgery.

22.    St. John's Hospital Physicians placed a 'tude' in Plaintiff's Chest and abministered (2)-Bags of Blood and antibiotics with the other pills previously mentioned.

23.    Plaintiff remained in I.C.U. for approximately 4-days being preped for Surgery on Plaintiff's left leg. Plaintiff was required to sign a release for surgery.

24.    Plaintiff was then taken by a team of surgery Doctors to complete the surgery in which Plaintiff was subjected to unnecessary Surgery and disfigurement by inexperienced physicians.

25.   Plaintiff was taken and placed back in I.C.U. after the Surgery, However after a couple of days plaintiff was then transferred to Room 832 at St. John's Hospital for Recovery and continued medical treatment.

26.   Plaintiff was 'cuffed' to a Hospital bed and Correctional Officers were assigned to watch Plaintiff.

27.   Plaintiff remained on the previously mentioned mind-Altering medications which consisted of approximately (15)-Pills a day, which included thorizine, Nurses were required to change Bandages/Dressings which covered the approximately (12)-Inch by (1)-Inch Surgery wound that had gotten infected and continued to drain puss. These Dressings were "removed" by and disposed of by the nursing staff and physicians. These bandages/Dressings covered Plaintiff's complete thigh of Plaintiffs Left leg. Plaintiff had no wounds that required a simple Band-Aid.

28.   Officer Travis M. Rauch was assigned to watch Plaintiff. Officer Rauch while watching Plaintiff had attempted to become personnaly involved with one of the attending Nurses at St. John's Hospital, who was assigned to change Plaintiff's Bandages/Dressings on Plaintiff's left leg.

29.   Officer Rauch advised the Nurse that he was born and raised in Hillsboro, Illinois and had just returned from Iraq. The Nurse said she was getting ready to go to lunch and Officer Rauch offered to buy her lunch for her and gave the nurse money.

30.   Officer Rauch became upset when the nurse never returned to give him his change. The following day the nurse again came in to plaintiff's room to change Bandages/Dressings on Plaintiff's left

-5-

leg and Officer Rauch and the nurse discussed why she had not brought
him back any change from buying her lunch which she claimed she didn't
think she was required to bring back any change. Officer Rauch then
asked the Nurse to meet him at a Club called "Eleven-West" in
Springfield, Illinois that night, and she agreed and left the room.

31.    The following day, August 5th, 2006, Officer Travis M.
Rauch again came to watch Plaintiff at St. Johns Hospital, However,
Officer Travis Rauch became abusive toward Plaintiff as he was upset
that the Nurse failed to meet him at the Club called "Eleven-West" and
stood him up. Officer Rauch stated he was tired of being assigned to
watch Plaintiff at the Hospital and knew how to change that.

32.    The Next day, August 6th, 2006 Officer Travis M. Rauch
came to watch Plaintiff, and again was abusive toward plaintiff after
Plaintiff inquired about his date with the Nurse. Officer Rauch stated
to Plaintiff that he wouldn't be watching Plaintiff much longer, and
asked Plaintiff how he liked Pontiac? And told Plaintiff that's
probably where plaintiff would be going, and Plaintiff asked 'why' he
would be going there. Officer Rouch stated "You'll see".

33.    Plaintiff did not see Officer Travis M. Rauch any more
after August 6th, 2006, and Plaintiff remained in St. John's Hospital
until August 10th, 2006 when he was returned to Graham Correctional
Center Health Care Unit.

34.    Upon Plaintiff's arrival at Graham Correctional centers
Health Care Unit, Plaintiff was placed in a "Segregation" Cell within
the facility hospital.

35.    Upon Plaintiff's inquiry of why he was being kept in the
"Segregation" cell, Plaintiff was only told that "He may have a Ticket"
(meaning Disciplinary Ticket) for some type of rule violation, which

-6-

Plaintiff knew nothing about any Rule Violations that he could have possibly committed prior to being admitted to the Hospital Health Care Unit for treatment.

36.   On August 10th or 11th, 2006, Plaintiff was seen by Doctor Zaire and Doctor Alonza (Together or Seperately), However, after they observed the Tube that remained in Plaintiff's Chest that had been placed there by St. John's Hospital for the purpose of administering two-bags of Blood to Plaintiff, one of these Doctor's Mistook the purpose of the "Chest Tube" as being necessary for Dialysis, and without any other type of testing Ordered that Plaintiff be taken to Dialysis on Tuesdays, Thursdays and Saturdays.

37.   On Saturday, August 12th, 2006, Plaintiff began Dialysis Treatments. Plaintiff inquired why he needed Dialysis, and was only told the "Doctor Ordered it".

38.   On August 21st, 2006 Plaintiff received (2) (Adjustment Committee Final Summary Reports) (Attached) which alleged that Plaintiff "Refused to Appear" to address the Charges for an alleged incident that allegedly occurred on August 5th, 2006 wherein plaintiff was alleged to have "Assaulted" Officer Travis Rauch while confined in the Health Care Unit, and alleged that Plaintiff had "Threatened" Officer Rauch by alleging he would Kill him if he could get up.

39.   Plaintiff's Disciplinary action against him was [1-year C-Grade, 1-Years Segregation, Loss of 1-year Good Conduct Credit or 1-year Statutory Good-Time, 6-Months Contact visit restriction and 6-months Gym/Yard Restriction],

40.   Plaintiff was never served a copy of any alleged Disciplinary Report written by Officer Rauch on August 5th, 2006, Secondly, Plaintiff was not in the Graham Health Care Unit on August 5th, 2006, but was

in Springfield, Illinois in St. John's Hospital on August 5th, 2006,
in which Plaintiff does not recall any such incidents as he was on
numerous mind-altering medications, including thorizine and (14)-other
medications. Further,

41.    On August 21st, 2006, Plaintiff received the second
(Adjustment Committee Final Summary Report) (Attached) which Plaintiff
received in the Institutional mail with the other one, which also
alleged Plaintiff "Refused to Appear" to address the charges for yet
another alleged incident on August 6th, 2006, wherein Plaintiff was
alleged to have again "Assaulted" this same Officer Travis Rauch
by allegedly "Spitting on the Officers Boot" and "Disobeying a Direct
Order" while confined in the Health Care Unit.

42.    Plaintiff's Disciplinary action aginst him was [1-Year
C-Grade, 1-year Segregation, Loss and Revoke 1-Year Good Conduct
Credit or 1-year Statutory Good-time, Disciplinary Transfer, and 6-
Months Contact Visit Restriction (Consecutive) to the other Disciplinary
Report].

43.    Plaintiff was never served a copy of any alleged Disciplinary
Report by Defendant McCluskey who was in Graham Correctional Center
and Plaintiff was confined to and chained to a Hospital Bed in
Springfield, Illinois in St. John's Hospital until August 10th, 2006,
Further, Plaintiff does not recall any such alleged incidents as he
was on numerous mind-altering medications, including thorizine and
(14)-other medications. Further,

44.    Plaintiff was never told about or given any opportunity
to be taken before any Adjustment Committee on (August 15th, 2006) as

-8-

Plaintiff on August 15th, 2006 at 10:39 A.M. was in "Dialysis from
8:30 A.M. to 11:30 A.M. (which takes 3-hours to complete each Dialysis
Treatment) and would not have been available for any such Adjustment
Committee Hearing irregardless, as the Treatment is one continuing
process that cannot be stopped and started again for plaintiff to go
or appear anywhere else. Plaintiff was never advised of any such
Hearing and never refused to address any charges.

45.   Plaintiff first became aware of these alleged Disciplinary
Reports being written on him by Defendant Travis Rauch <u>After</u> the
Adjustment Committee's Final Summary Report was <u>mailed</u> to Plaintiff
on August 21st, 2006 and he was being "Punished" and read that he
had lost 2-years Good-time.

46.   Officer Travis M. Rauch wrote two false Disciplinary Reports
in order to change Job Assignments for reasons previously stated.

47.   Plaintiff was not medically able to appear anywhere on
his own accord as he was not able to walk and had to be placed in a
Wheel-Chair by Correctional Staff and transported to Dialysis or
anywhere he was required to go.

48.   In Late September 2006, Plaintiff was taken from Graham's
Health Care Unit and transferred to Stateville Correctional center
and Placed in Disciplinary Segregation Unit (F-House) Cell 2-04.

49.   Plaintiff was scheduled to continue Dialysis Treatment,
and Heath Care Nurses were required to still change the Bandages/Dressings
on Plaintiff's Left-Thigh while he was confined to Segregation.

50.   The Dialysis Treatment continued for about (11)-months,
Each Month Doctor McFadden would check-up and see Plaintiff throughout
the eleven month period.

51.   On July 7th, 2007 After having "Lab" work done each month,

Plaintiff was again seen by Doctor McFadden, However, On this
visit/examination, Doctor McFadden "Stated he was Sorry", that he had
been overlooking Plaintiff's Lab Work, and was supposed to take Plaintiff
Off Dialysis Months ago, as he was mistakenly placed on Dialysis by
a Graham Correctional Center Doctor.

52.    Plaintiff was Ordered By Doctor McFadden to cease "dialysis"
and Ordered Medical staff to Cease Dialysis, However, Dr. McFadden
then Ordered continued Lab-work treatment every four-months, Plaintiff
was to be taken to the Lab to draw blood to continue to monitor
Plaintiff's Kidney's however, during these Lab tests and other medical
complications, Dr. Ghosh discovered that Plaintiff's "Liver" had been
messed up by the unnecessary misdianosed Dialysis Treatments, which
caused a physical "lump" to appear due to the blood blockage of the
liver, Plaintiff is suffering poor blood flow and cronic skin irritations
that require constant treatment, The damage caused by the unnecessary
Dialysis Treatments is permanent and irreparable. These Ill-Health
symptoms continue to occur, and Plaintiff was Ordered to be examined
every four months, however, in retaliation for filing this action in
the District Court seeking Judicial Redress, the scheduled Medical
Care stopped.

53.    (In Late August 2006) Dr. Zaire of Graham Correctional
Center Ordered that Plaintiff be taken to an outside hospital in
Springfield Illinois to have a "cathater" placed in Plaintiff's "Right-
Arm" for further "Dialysis Treatments, which permantely "Disfigured"
and caused Permenent "Disability" to Plaintiff's right-Arm.

## COUNT-I

### (42 U.S.C. § 1983 Claim for violation of the Eighth Amendment for "Deliberate Indifference of Serious Medical needs")

54.    Plaintiff re-alleges paragraphs 1 through 53.

55.    Defendant's Doctor Zaire and/or Doctor Alonza individually, jointly, and in conspiracy, caused the physical pain and suffering, and Mental Distress, and physical 'disfigurements' and partial and permement disabilities caused to plaintiff that is continuing to occur Due to Defendant's Deliberate Indifference of Serious Medical Needs to Plaintiff Where Defendant's Judgment and Treatment was "So blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [Plaintiff's] condition and/or Said Medical Treatment was "So grossly incompetent, inadequate, and/or unreasonable as to Shock the Conscience" which constitutes Deliberate Indifference to Serious Medical Needs of Plaintiff, by wrongfully placing Plaintiff on Dialysis.

56.    The actions of Defendants Zaire and/or Alonza Due to the Deliberate Indifference of Serious medical Needs of Plaintiff were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Zaire and/or ALONZA for substantial compensatory damages in an amount in excess of Fifty Thousand ($50,000) dollars and further against Defendants, and because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, Punitive damages for the reckless disregard of Plaintiff's Constitutional rights, plus the costs of this action, Attorney's fee's and such other relief as this Court deems equitable and just.

## COUNT-II

### (42 U.S.C. § 1983 Claim for Violation of the Eighth Amendment for "Deliberate Indifference of Serious Medical needs")

57.    Plaintiff re-alleges paragraphs 1 through 53.

58.    Defendant's Doctor Zaire and/or Alonza individually, jointly, and in conspiracy, caused plaintiff unnecessary pain and suffering, as well as Mental Distress by an unnecessary Delay of over a week in treating the "Absest" in Plaintiff's Left-Leg which was due to Doctor's failure to inquire into facts necessary to make a professional Judgment and/or Doctor failed to perform tests for "Absests in patient with symptoms that called for them Due to Defendant's Deliberate Indifference of Serious Medical needs of Plaintiff where Defendant's Judgment was "So blatently grossly incompetent, inadequate, and unreasonable as to not be described as Treatment which seriously aggravated [Plaintiff's] condition.

59.    The actions of Defendants Zaire and/or Alonza Due to the Unnecessary Delay in providing reasonable Medical Treatment, and the denial of treatment that "could eliminate pain and suffering at least temporarily" or to provide "Speedy Access to other physicians or facilities that could provide adequate medical care was Deliberate Indifference of Serious Medical Needs to Plaintiff and were the direct and proximate cause of the injuries and unnecessary pain to plaintiff which are set forth above.

WHEREFORE, Plaintiff demands judgment against Defendant's Zaire and/or Alonza for substantial compensatory damages in an anount in excess of Ten Thousand ($10,000) dollars and further against Defendants, and because these Defendant's acted in a malicious, willful, wanton, and/or with reckless disregard for Plaintiff's Constitutional rights,

for substantial punitive damages, plus the costs of this action, Attorney Fee's and such other relief as this Court deems equitable and just.

## COUNT-III

### (42 U.S.C. § 1983 Claim for Violation of the Eighth Amendment for "Deliberate Indifference of Serious Medical needs")

60.    Plaintiff re-alleges paragraphs 1 through 53.

61.    Defendant's Doctor Zaire and/or Alonza individually, Jointly, and in conspiracy, caused Plaintiff unnecessary Pain and Suffering, Mental Distress, Unnecessary Disfigurement by Ordering and allowing Treatment and Surgery on Plaintiff's Left-Leg for an Absest  by the rendering of Medical Services by unqualified personnel and then requiring Plaintiff to sign a "Waiver" while under Intoxicating and Mind-Altering Medications to agree to the Surgery by "Students" just to obtain some type of Medical Treatment or fear the loss and amputation of his left-leg if he refused to allow the unqualified "Students" to Operate on Plaintiff's Leg, Wherein said operation caused permanent disfigurement and disability of the use of Plaintiff's Left-Leg, by the blatently unnecessary incision that was blatently out of proportion with adequate treatment constituting Deliberate Indifference of Serious Medical Needs of Plaintiff Where Defendant's Judgment and Treatment was "So blatently inappropriate as to evidence intentional mistreatment which was likely to aggravate [Plaintiff's] then existing condition and/or said Medical Treatment was "so grossly incompetent, inadequate and/or unreasonable as to Shock the Conscience" of society.

62.    Defendant's Doctor's Zaire and/or Alonza individually, Jointly and/or in conspiracy by their actions caused the Deliberate

Indifference of Serious Medical Needs of Plaintiff which were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

WHEREFORE, Plaintiff demands judgment against Defendant's Doctor Zaire and/or Doctor Alonza for substantial compensatory damages in an amount in excess of Fifty Thousand ($50.000) dollars and further against Defendant's and because of these Defendants acted maliciously, willfully, and/or wantonly toward plaintiff, and Punitive damages in a substantial amount for the reckless disregard of Plaintiff's Constitutional rights, plus the costs of this action, Attorney Fee's and such other and further relief as this Court deems equitable and Just.

## COUNT-IV

### (42 U.S.C. § 1983 Claim for Violation of the Eighth Amendment for "Deliberate Indifference of Serious medical needs")

63.   Plaintiff re-alleges paragraphs 48 through 53.

64.   Defendant Doctor McFadden individually, and in conspiracy, caused Plaintiff physical permanent injury, pain, and Mental Distress Due to Defendant's Deliberate Indifference of Serious Medical Needs of Plaintiff by maintaining Plaintiff on Unnecessary Dialysis Treatments which ultimately caused Plaintiff harm and permanent injury to Plaintiff's Liver by Defendant's neglect in failing to review Lab analysis test results which confirmed that plaintiff was wrongly diagnosed by a Graham Doctor and Plaintiff should not have been on Dialysis, Which neglect and Deliberate Indifference of Serious medical Needs of Plaintiff caused Plaintiff to be unnecessarily on "Dialysis Treatment" for

-14-

several Months while in Defendants care.

65.    The actions of Defendant Doctor McFadden Due to the
Deliberate Indifference of Serious medical Needs by his failure and
Neglect in reviewing Monthly Lab Test Results which confirmed that
Plaintiff was wrongly placed on Dialysis by a Graham Doctor was the
direct and proximate cause of Plaintiff's Injuries which are set
forth above.

**WHEREFORE,** Plaintiff demands judgment against Defendant McFadden
for substantial compensatory damages in an amount in excess of Fifty
Thousand ($50,000) dollars and further against Defendant because
Defendant acted in a malicious, willful, wanton, and/or reckless
disregard for Plaintiff's Constitutional rights, and for substantial
Punitive Damages, plus costs of this action, Attorney's fee's and such
other relief as this Court deems equitable and just.

## COUNT-V

**(42 U.S.C. § 1983 Claim for Violation of the Eighth and
Fourteenth Amendments for "Deliberate Indifference of Serious Medical
Needs" Due to Retaliation for seeking Judicial Redress.")**

66.    Plaintiff re-alleges paragraphs 48 through 53.

67.    Defendant McFadden, individually, jointly, and/or in
conspiracy with other CMS Employee's have caused further physical
pain, discomfort and suffering, including unnecessary Severe emotional
and Mental Distress in "Retaliation" for filing this civil action.
Wherein, <u>Prior</u> to defendants knowledge of a suit against them, said
Doctors had ordered continued Lab Blood testings every 4-months to
monitor plaintiff's Blood due to the damage caused by being wrongly

-15-

subjected to "Dialysis Treatments" However, the "Scheduled" Care
has not been administered since defendants became aware of the suit
naming them as defendants in this action.

68.    Defendant McFaddens actions constitutes Deliberate
Indifference of Serious Medical Needs of Plaintiff by the "Retalitory"
acts of "Failing to provide prescribed treatment" after becoming aware
of this action being filed against them.

**WHEREFORE,** Plaintiff demands judgment against Defendant for
compensatory damages in an amount in excess of Ten Thousand ($10,000)
dollars and further because of Defendant acted malicious, willful
and/or wantonly toward Plaintiff, further, Plaintiff requests Punitive
Damages for the reckless disregard of Plaintiff's Constitutional rights,
Plus the costs of this action, Attorney Fee's and such other relief as
this Court deems equitable and just.


### COUNT-VI

**(42 U.S.C. § 1983 Due Process Claim for Deprivation of
'Notification' of false Disciplinary Report and Notice of Hearing.)**

69.    Plaintiff re-alleges paragraphs 21 through 47.

70.    Defendant's Rauch, McCluskey, Lipe and Williams, individually,
Jointly, and in conspiracy, denied Plaintiff Due Process and Equal
Protection of the Law by Defendant Travis Rauch's writing two false
Disciplinary Reports for alleged Assault on consecutive days in order
to get a different Job assignment irregardless of the harm that would
encomb Plaintiff, and for Defendant's Rauch and McCluskey's failure
to serve or otherwise give Plaintiff "Notification" of these False
Disciplinary Reports being written against him, and for Defendant's
McCluskey, Lipe and Williams failure to give Plaintiff an opportunity

-16-

to appear and address these false charges or otherwise give Plaintiff "Notification" that a Hearing was being held denied plaintiff Due Process of Law wherein Plaintiff was under Medical Care and Supervision and at the time of this alleged hearing was receiving Medical "Dialysis Treatment", which would make it "impossible" to appear at any alleged Disciplinary Hearing" at 10:30 a.m. or 10:39 A.M. as Plaintiff was being administered "Dialysis Treatment from 8:30 .AM. to 11:30 A.M. On Tuesday, Thursday and Saturday, and this alleged hearing was held on (Tuesday).

71.    Plaintiff suffered the loss of (2)-years Good Time Credit, was illegally confined to Disciplinary Segregation for (2)-years, Plaintiff was subjected to the loss of (1)-years visiting Restriction, the loss of (6)-Months Gym/Yard restriction and was subjected to enhanced Security Disciplinary Transfer, which defendants intended, by subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause plaintiff and his family severe emotional distress.

72.    As a direct and proximate cause and result of Defendant's outrageous conduct, Plaintiff was injured, by the punishments listed above and Plaintiff has experienced, and continues to experience, severe emotional distress, including sleep disruption, anxiety, depression, and inability to focus or concentrate due to said stress.

WHEREFORE, Plaintiff demands judgment against Defendants Rauch, McCluskey, Lipe and Williams for compensatory damages, in an amount in excess of Fifty Thousand ($50.000) dollars, and, because these Dendants acted in a malicious, willful and/or wanton manner toward Plaintiff by depriving him of Notification of any alleged Disciplinary Report or Hearing as described above, and for Punitive damages, plus costs

of this action, Attorneys Fee's, and such other and further relief as this Court deems equitable and just.

## COUNT-VII

### (State Law Claim for Intentional Infliction of Emotional Distress)

73.    Plaintiff re-alleges paragraphs 21 throgh 47 and 69 through 72.

74.    Defendant's Rauch, McCluskey, Lipe and Williams, inter alia, engaged in extreme outrageous conduct, by conspiracy to deprive Plaintiff of Notification and a Hearing as previously discribed.

75.    Defendant's Rauch, McCluskey, Lipe and Williams intended, by subjecting plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause both Plaintiff and his family severe emotional distress.

76.    As a direct and proximate result of Defendant's outrageous conduct, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress, including sleep disruption, anxiety, depression and the inability to focus or concentrate due to said stress.

WHEREFORE, Plaintiff demands judgment against Defendants Rauch, McCluskey, Lipe and Williams for compensatory damages, in an amount in excess of Fifty Thousand ($50.000) dollars, and, because these Defendant's acted in a malicious, willful and/or wanton manner toward Plaintiff, for Punitive damages, plus costs of this action, Attorney Fee's, and such other and further relief as this Court deems equitable and just.

## COUNT-VIII

### (State Law Claim for Conspiracy)

77.    Plaintiff re-alleges paragraphs 1 through 76.

78.    Defendant's Zaire, Alonza, McFadden, Rauch, McCluskey, Lipe and Williams, with other unused and unnamed co-conspirators, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely accuse, maliciously deprive petitioner due process, and to intentionally inflict both physical injury and/or emotional distress on plaintiff.

79.    In furtherance of this conspiracy or conspiracies, the Defendant's named above together with their unnamed co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraphs 10 through 76 above.

80.    Said conspirac(ies) and overt acts were and are continuing in nature.

81.    Defendant's and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely accuse, maliciously deprive, defame, orintentionally inflict physican pain, suffering, or severe emotional distress on Plaintiff, constitutes the tort of conspiracy as set forth above.

**WHEREFORE,** Plaintiff demands compensatory damages in an amount in excess of Fifty Thousand ($50.000) dollars, jointly and severally from the Defendants named in this Count, and because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for Punitive Damages, plus costs of this action, Attorney Fee's and whatever additional relief the Court deems equitable and just.

DATED: On this <u>18th</u> day of <u>JULY</u>, 2008.

RESPECTFULLY SUBMITTED,

*Ronald D. Granger*

RONALD D. GRANGER B-24617 (Plaintiff)
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434-0112

## PROOF/CERTIFICATE OF SERVICE

    I, <u>Ronald D.Granger</u>, the Plaintiff/Affiant herein certify that
I have caused to be served The **Original** and (1)-Copy to the Clerk of
the District Court, **Further,** I have caused to be served a **copy** of
this "Amended Complaint" on **Each** Named Defendant at the addresses
stated in Paragraphs 2 through 9 OF THE Amended Complaint by placing
them in the U.S. Mail, Postage Prepaid at Stateville Correctional
Center on this <u>23</u>rd day of July, 2008.

*Ronald D. Granger*

RONALD D. GRANGER (Affiant)

**STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS**
**ADJUSTMENT COMMITTEE**
**FINAL SUMMARY REPORT**

Name: GRANGER, RONALD D        IDOC Number: B24617        Race: BLK
Hearing Date/Time: 8/15/2006  10:39 AM    Living Unit: GRA-H-01-01    Orientation Status: N/A
Incident Number: 200602608/1 - GRA        Status: Final

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 8/5/2006 | 200602608/1-GRA | RAUCH, TRAVIS M | HEALTH CARE UNIT | 05:33 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 206 | Intimidation Or Threats | Guilty |
| 102 | Assaulting Any Person - Staff | Guilty |
| | *Comments:Hit c/o's leg with bloody band-aid* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| No Witness Requested | | | |

## RECORD OF PROCEEDINGS
REPORT READ, OFFENDER GRANGER REFUSED TO APPEAR TO ADDRESS THE CHARGES.

THE COMMITTEE CONTACTED THE REPORTING EMPLOYEE WHO IDENTIFIED OFFENDER GRANGER BY ID CARD

THE COMMITTEE REVIEWED THE COPY OF THE ATTACHED WITNESS REPORT SUBMITTED BY THE REPORTING EMPLOYEE WHICH VERIFIES THAT OFFENDER GRANGER DID THROW A BLOODY BAND-AID AT THE REPORTING EMPLOYEE STRIKING THE REPORTING EMPLOYEE ON THE LEG.

## BASIS FOR DECISION
BASED ON THE OBSERVATION OF THE REPORTING EMPLOYEE THAT OFFENDER GRANGER DID THROW A BLOODY BAND-AID AT THE REPORTING EMPLOYEE STRIKING THE REPORTING EMPLOYEE ON THE LEG, OFFENDER GRANGER THEN STATED TO THE REPORTING EMPLOYEE THAT HE WOULD KILL THE REPORTING EMPLOYEE IF HE COULD GET UP, THE POSITIVE ID OF OFFENDER GRANGER BY THE REPORTING EMPLOYEE BY ID CARD, THE COPY OF THE ATTACHED WITNESS REPORT BY THE REPORTING EMPLOYEE WHICH VERIFIES THAT OFFENDER GRANGER DID THROW A BLOODY BAND-AID AT THE REPORTING EMPLOYEE STRIKING THE REPORTING EMPLOYEE ON THE LEG, AND OFFENDER GRANGER'S REFUSAL TO APPEAR TO ADDRESS THE CHARGES, THE COMMITTEE IS SATISFIED THE VIOLATIONS OCCURRED AS REPORTED. SEG TIME 8-10-07 TO 8-10-08.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Year CGrade | 1 Year CGrade |
| 1 Year Segregation | 1 Year Segregation |
| Revoke GCC or SGT 1 Year | Revoke GCC or SGT 1 Year |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| 6 Months Gym/Yard Restriction | 6 Months Gym/Yard Restriction |

**Basis for Discipline:NATURE OF OFFENSE**

## Signatures
**Hearing Committee**

| | Signature | Date | Race |
|---|---|---|---|
| LIPE, GREGORY  - Chair Person | | 08/15/06 | WHI |
| WILLIAMS, LEANNA J | | 08/15/06 | ASN |

Recommended Action Approved

**Final Comments:** N/A

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** GRANGER, RONALD D     **IDOC Number:** B24617     **Race:** BLK

**Hearing Date/Time:** 8/15/2006   10:39 AM     **Living Unit:** GRA-H-01-01     **Orientation Status:** N/A

**Incident Number:** 200602608/1 - GRA     **Status:** Final

---

Steven Bryant / AKO  8/15/2006          _Steven C Bryant_       08/15/06

**Chief Administrative Officer**          **Signature**          **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

**Employee Serving Copy to Committed Person**          8/26/06  10:00 AM

**When Served - Date and Time**

State of Illinois - Department of Corrections
DISCIPLINARY REPORT                                    Page __1__ of __1__

☒ Disciplinary Report   __8-5-06__        ☐ Investigative Report _____
                            Date                                    Date

Committing Person: __Granger__   No. __1329612__   Facility: __Graham C.C.__

Observation Date: __8-5-06__  Time: __5:33__  ☒am/pm Location: __St. Johns. Room 832__

__Yo Powell   ML 6__                     __[signature] / 8-5-06 / 5:40pm__
PRINT Employee's Name                    Employee's Signature/Date/Time

Offense: 504 B __102 Assault, 206 Intimidation -threats__

Observation: On the above date and approx time this Yo was
assaulted by Offender Granger (1329612). Offender Granger threw
a bloody bandord at this Yo which ht this Yo in the leg.
this Yo told offender Granger to stop throng things. Offender
Granger stated that he would kill this Yo if he could
get up. this is a form of intimidation and threats.
EOR —

Witnesses, if any: __N/A__

NOTE: Use continuation page if necessary to describe observation and/or witnesses

☒ Disciplinary Confinement   ☐ Investigative Status   Reason: __Nature of Incident__

__N. chris__                               __[signature]    8/?/06__
    PRINT Name                      Shift Supervisor's Signature and Date
                                    (For Community Correctional Centers, Chief Adm. Off.)

☐ Reprimand/Reviewed this Disciplinary Officer   Comments: _____

_____          Signature/Date
    PRINT Name

☐ Adjustment Committee/Reviewing Committee   ☐ 100/200 referred to Program Unit

__Lt. [signature]__ __McCluskey__        __[signature] 8/2/06__
                      PRINT Name         Reviewing Officer's Signature and Date

_____   __McCluskey__   __[signature]  8/3/06__
    PRINT Name                      Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATORY AND DISCIPLINARY REPORTS

You have the right to appear and present your version of a statement in explanation concerning the charges. You may present relevant physical material such as records or documents.

THE PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT AND/OR COMMITTEE ON DISCIPLINARY REPORTS

You may call witnesses to testify on your behalf. You may request a list of witnesses...

__McCluskey__              __McClX__       __8/3/06__   __8:00 O__

## STATE OF I   NOIS -- DEPARTMENT OF CORF   TIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** GRANGER, RONALD D     **IDOC Number:** B24617     **Race:** BLK

**Hearing Date/Time:** 8/15/2006  10:30 AM     **Living Unit:** GRA-H-01-01     **Orientation Status:** N/A

**Incident Number:** 200602609/1 - GRA     **Status:** Final

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 8/6/2006 | 200602609/1-GRA | RAUCH, TRAVIS M | HEALTH CARE UNIT | 06:33 PM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 403 | Disobeying A Direct Order | Guilty |
| 102 | Assaulting Any Person - Staff | Guilty |
| | *Comments:SPIT ON OFFICER* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|--------------|------------|--------------|----------------|

**No Witness Requested**

### RECORD OF PROCEEDINGS
REPORT READ, OFFENDER GRANGER REFUSED TO APPEAR TO ADDRESS THE CHARGES.

THE COMMITTEE CONTACTED THE REPORTING EMPLOYEE WHO IDENTIFIED OFFENDER GRANGER BY ID CARD

THE COMMITTEE REVIEWED THE COPY OF THE ATTACHED WITNESS REPORT SUBMITTED BY THE REPORTING EMPLOYEE WHICH VERIFIES THAT OFFENDER GRANGER WAS ORDERED TO STOP SPITTING, OFFENDER GRANGER REFUSED, OFFENDER GRANGER THEN HIT THE REPORTING EMPLOYEE WITH SPIT ON THE REPORTING EMPLOYEE'S BOOT.

### BASIS FOR DECISION
BASED ON THE OBSERVATION OF THE REPORTING EMPLOYEE THAT OFFENDER GRANGER DID SPIT AT THE REPORTING EMPLOYEE AS THE REPORTING EMPLOYEE WAS WALKING BY OFFENDER GRANGER'S BED, OFFENDER GRANGER WAS GIVEN A DIRECT ORDER TO STOP SPITTING, BUT REFUSED TO DO SO AS ORDERED, OFFENDER GRANGER THEN SPIT AND HIT THE REPORTING EMPLOYEE ON THE REPORTING EMPLOYEE'S BOOT, THE POSITIVE ID OF OFFENDER GRANGER BY THE REPORTING EMPLOYEE BY ID CARD, OFFENDER GRANGER'S REFUSAL TO APPEAR TO ADDRESS THE CHARGES, AND THE COPY OF THE ATTACHED WITNESS REPORT WHICH VERIFIES THAT OFFENDER GRANGER DID SPIT ON THE REPORTING EMPLOYEE STRIKING THE REPORTING EMPLOYEE'S BOOT, THE COMMITTEE IS SATISFIED THE VIOLATIONS OCCURRED AS REPORTED. SEG TIME 8-10-06 TO 8-10-07

### DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|-------------|-------|
| 1 Year CGrade | 1 Year CGrade |
| 1 Year Segregation | 1 Year Segregation |
| Revoke GCC or SGT 1 Year | Revoke GCC or SGT 1 Year |
| Transfer (Disciplinary) | Transfer (Disciplinary) |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |

**Basis for Discipline:NATURE OF OFFENSE**

### Signatures
#### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| LIPE, GREGORY  - Chair Person | | 08/15/06 | WHI |
| WILLIAMS, LEANNA J | | 08/15/06 | ASN |

Recommended Action Approved

STATE OF    INOIS -- DEPARTMENT OF COR    CTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

**Name:** GRANGER, RONALD D          **IDOC Number:** B24617          **Race:** BLK

**Hearing Date/Time:** 8/15/2006  10:30 AM          **Living Unit:** GRA-H-01-01          **Orientation Status:** N/A

**Incident Number:** 200602609/1 - GRA          **Status:** Final

**Final Comments:** N/A

---

Steven Bryant / AKO  8/15/2006                          08/15/06
_____          _____          _____
**Chief Administrative Officer**                    **Signature**                  **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

                                                        8/20/06  10⁰⁰ A
_____          _____
**Employee Serving Copy to Committed Person**          **When Served -- Date and Time**

X _____ 8-6-08 _____                      Investigation Report _____

_____ Granger _____              1329617      Facility Graham CC

_____ 8-6-06 _____ 8:33        Location St-Johns      Room 832

Roselli amb _____                      _____ /8-6-08/ 2:00ᵖᵐ
                                          Physician's Signature/Date/Time

① 102 Assault, 403 Disobeying a direct order _____

On the above date and approx. time this I/o
was Assaulted by Offender Granger (1324617). Offender
Granger Spit at this I/o as this I/o was walking by
his bed. this I/o gave Offender Granger a direct order to Stop
Spitting. Offender granger Spit again at this I/o and
it landed on this I/o boot. This is An Assault   EDK

N/A

X _____
X _____          Nichru                          _____ 8-7-06
                   McCluskey                        McC 8/13/06