IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD D. GRANGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-39 |
| | ) | |
| DR. FRANCIS KAYIRA, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a two-count second amended complaint filed by Plaintiff Ronald D. Granger against Defendants Dr. Francis Kayira, Dr. Morufu Alausa, Dr. David McFadden, Travis M. Rauch, Gregory Lipe, Leanna Williams, Steven Bryant, and a "Mr. McCluskey." Count I alleges a claim under 42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment rights resulting from the doctor Defendants' deliberate indifference to Plaintiff's serious medical needs, and Count II alleges a § 1983 claim for deprivation of Plaintiff's Fourteenth Amendment rights resulting from the remaining Defendants' deliberate indifference to Plaintiff's due process rights.

Defendants Alausa, McFadden, and Kayira have moved to dismiss [74, 76, 90] Plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The remaining Defendants have not so moved; however, as noted by Plaintiff's counsel in the response to Dr. Kayira's motion to dismiss (see Pl.'s Resp. at 5), the Court previously dismissed [31, 103] Plaintiff's claims against those Defendants pursuant to *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), which held that "[u]nrelated claims against different defendants belong in different suits," and therefore those claims are no longer viable in this suit.

**I.      Background[1]**

     **A.      Introduction**

Plaintiff, an inmate with the Illinois Department of Corrections ("IDOC"), alleges that Dr. Francis Kayira, Dr. Morufu Alausa, and Dr. David McFadden (collectively referred to as the "Doctor Defendants") knowingly provided unnecessary dialysis treatment, violating the Eighth Amendment prohibition against cruel and unusual punishment by showing deliberate indifference to Plaintiff's serious medical needs. Plaintiff currently is incarcerated at Western Illinois Correctional Center in Mount Sterling. Prior to being transferred to Western, Plaintiff was incarcerated at Stateville Correctional Center near Joliet, Illinois, and at Graham Correctional Center in Hillsboro, Illinois.

In July 2006, while serving time at Graham Correctional Center, Plaintiff was under the care of Dr. Kayira. On July 6, Plaintiff was admitted to St. John's Hospital in Springfield, Illinois, to treat an abscess in his leg and other medical complications. Plaintiff required several surgeries as well as dialysis and remained at St. John's for approximately five weeks. On August 10, he was returned to Graham Correctional Center, where he continued to receive dialysis under the care of Drs. Kayira and Alausa. As part of Plaintiff's dialysis treatments, Dr. Kayira ordered that a catheter be placed in Plaintiff's right arm.

On September 15, 2006, Plaintiff was transferred to Stateville Correctional Center, where, according to Plaintiff's second amended complaint, Drs. Kayira and Alausa, as well as a new doctor, Dr. McFadden, supervised Plaintiff's dialysis treatments. The complaint further alleges that in "late" 2007, Plaintiff was told by a "Dr. Ghosh" that the dialysis treatments he had

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in Plaintiff's second amended complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Additionally, any citations to "Compl." shall be to Plaintiff's second amended complaint, unless otherwise noted.

2

received were unnecessary and had caused damage to his liver. Compl. at ¶ 29.[2] Around that time, Plaintiff's dialysis treatments stopped.

### B. Administrative grievance procedures

IDOC regulations set out the procedures that "offenders" must follow for the "Filing of Grievances" in Illinois Administrative Code § 504.810. Those procedures first require an inmate to attempt to resolve grievances through his counselor. 20 Ill. Admin. Code § 504.810(a). If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period. *Id*. The grievance form must be addressed to the Grievance Officer ("GO") and "deposited in the living unit mailbox or other designated repository." 20 Ill. Admin. Code § 504.810(b). The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id*.

A Grievance Officer provides the initial review of grievances. 20 Ill. Admin. Code § 504.830(a). If the GO does not deem the grievance to be without merit, the regulations (20 Ill. Admin. Code § 504.830(d)) direct the GO to consider the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"), who is defined to be highest ranking official of a correctional facility (20 Ill. Admin. Code § 504.802). The CAO then advises the inmate of his or her decision within two months where reasonably feasible under the circumstances. 20 Ill. Admin. Code § 504.830(d).

---

[2] The Court notes that Dr. Ghosh was dismissed from this lawsuit on September 2, 2008 [31], after Plaintiff conceded that Dr. Ghosh had done nothing wrong. The Court further notes that Plaintiff's allegation that Dr. *Ghosh* informed him that the dialysis treatments that he had received were unnecessary is inconsistent with Plaintiff's allegation in his grievance of October 1, 2007, filed with officials at Stateville Correctional Center, that Dr. *McFadden* informed him that he never needed dialysis.

3

If the inmate is not satisfied with the CAO's decision, he may appeal in writing to the Director of the IDOC within 30 days. 20 Ill. Admin. Code § 504.850(a). After reviewing the grievance and the responses by the GO and the CAO, the Director decides whether the grievance requires a hearing before the Administrative Review Board ("ARB") or is without merit or can be resolved without a hearing. 20 Ill. Admin. Code § 504.850(b). If the grievance proceeds to a hearing, the ARB submits a written report to the Director who reviews the findings and recommendations of the ARB and makes a final determination within 6 months. 20 Ill. Admin. Code § 504.850(b)-(f).

### C. Plaintiff's October 1, 2007 grievance

According to his second amended complaint, Plaintiff filed a grievance regarding his "medical injuries" on October 1, 2007, but never received either a substantive response or any opportunity to be heard. Although he did not attach the grievance or any documents related to his grievance to his second amended complaint, he did attach the grievance to his initial *pro se* complaint and also attached related documents to his response to Dr. Kayira's motion to dismiss.[3] The grievance, dated October 1, 2007, states:

> I Ronald Granger was misdiagnosed by medical staff here in Stateville C.C. The H.C.U. maid [sic] an error on me. It cost a disability in my arm and liver and kidney. I was inform by the H.C.U. and M.D. McFadden that I never needed dialysis. The H.C.U. misdiagnosed lab work. Now I have a liver problem from the error that H.C.U. maid [sic] on me.

In the box entitled "Counselor's Response," it states that the grievance was received by the counselor on October 16, 2007, and next to "Response" it states "sent to health care unit to

---

[3] A court may take judicial notice of previous pleadings and public documents without converting a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment. See *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); see also *Sato v. Clarke*, 2003 WL 23274552, at *1 (W.D. Wis. Nov. 21, 2003) ("In deciding a motion to dismiss for failure to exhaust, a court may take judicial notice of public records, such as inmate grievance records, without converting the motion to dismiss into a motion for summary judgment.").

4

answer." Plaintiff apparently also sent the grievance to the Office of Inmate Issues, where it was received on November 9, 2007. In response to the grievance, the Office of Inmate Issues completed an "Administrative Review Board/Return of Grievance or Correspondence," dated November 13, 2007, and signed by Sherry Benton.[4] In the box entitled "Additional information required," Ms. Benton had circled the box stating, "Use the Committed Person's Grievance Report, DOC 0047 (formerly DC 5657), including the Grievance Officer's and Chief Administrative Officer's response, to appeal." In the box entitled "Other," Ms. Benton wrote, "The above is required. But your grievance also fails to cite specifics such as dates, when incidents occurred, where, etc."

Attached to Plaintiff's response to Dr. Kayira's motion to dismiss is the IDOC's "Response to Committed Person's Grievance." See Pl.'s Resp. at 2 and Ex. 1. The Response includes the following sections: "Grievance Officer's Report," "Chief Administrative Officer's Response," and "Committed Person's Appeal To The Director." The Grievance Officer's Report, dated January 2, 2008, states that Plaintiff's grievance was written on October 1, 2007, sent to the health care unit on October 23,[5] and received by the grievance office on November 5, 2007. The grievance officer attached a medical response, dated December 24, 2007, which stated that HCU Administrator C.A. Vance, RN, MSN, had reviewed Plaintiff's chart, discussed it with his physician, and was advised that Plaintiff had ESRD (end stage renal disease) for which dialysis is "definitely needed." Based on the medical response, the grievance officer completed her review of Plaintiff's grievance on January 2, 2008, and recommended "[n]o further action necessary at this time." The Chief Administrative Officer concurred with this

---

[4] This document also was attached to Plaintiff's initial *pro se* complaint.

[5] Plaintiff's counselor forwarded his grievance to the health care unit.

5

recommendation on January 4, 2008. Plaintiff did not complete the section entitled "Committed Person's Appeal To The Director."

## II. Discussion

### A. Legal standard on a Rule 12(b)(6) motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

### B. Exhaustion as a threshold issue for the Court to decide

All of the Doctor Defendants contend, among other things, that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to the

PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also *Pozo v. McCaughtney*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). In *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), the Seventh Circuit addressed "whether a prisoner plaintiff in a suit for damages governed by the Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." In a decision authored by Judge Posner, the court answered that question in the negative, holding that the district judge must determine as a threshold matter, before proceeding to disposition (or, in most cases, even discovery) on the merits, whether "the prisoner has properly exhausted his administrative remedies." *Id*. at 741-42; see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb. 18, 2009) ("The issue of exhaustion of available administrative remedies is a threshold inquiry for the court").

The purpose of the exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); see also *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins").

Because failure to exhaust is an affirmative defense, the burden of proof lies with the prison officials, not with the plaintiff. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) Moreover, there is no futility exception to PLRA's exhaustion requirement. See *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532 (7th Cir. 1999); *Massey v. Helman*, 196 F.3d 727 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d at 733. In short, "[e]xhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citations omitted).

As noted above, the PLRA obliges a prisoner who wishes to complain about prison conditions to forestall the filing of a lawsuit "until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); see also *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (failure to follow state rules about the time and content of grievances "means failure to use (and thus to exhaust) *available* remedies") (emphasis added). While the case law on what constitutes "availability" is not well developed, it is clear that a plaintiff's

8

claims will not be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809-10; see also *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

### C. The present case

#### 1. *Failure to appeal*

Plaintiff contends that he has exhausted all of his administrative remedies based on the grievance filed with the IDOC on October 1, 2007. Reviewing Plaintiff's second amended complaint, as well as the materials attached to his initial *pro se* complaint, there can be no dispute that Plaintiff completed a grievance form at Stateville Corrections Center on October 1, 2007. He also submitted the grievance to his counselor, as required under IDOC procedures, because in the box entitled "Counselor's Response," it states that the grievance was received by the counselor on October 16, 2007. Next to "Response," the counselor noted that the grievance was "sent to health care unit to answer." Plaintiff did not check the box indicating that the grievance was an "EMERGENCY grievance." He also sent the grievance to the Office of Inmate Issues, which issued an "Administrative Review Board/Return of Grievance or Correspondence," dated November 13, 2007, and signed by Sherry Benton. The Return of Grievance notified Plaintiff that his appeal was premature because additional forms and information were needed. Not only was Plaintiff directed to submit the proper paperwork, including the grievance officer's and chief administrative officer's responses to his grievance, but Plaintiff also was notified by Ms. Benton that his grievance "fail[ed] to cite specifics such as dates, when incidents occurred, where, etc."

Despite Ms. Benton's admonition that Plaintiff's grievance lacked sufficient detail and Plaintiff's failure to resubmit a more detailed grievance, a "Response to Committed Person's

9

Grievance" ("Response") eventually was completed.[6] In the Response, the grievance officer stated that Plaintiff's grievance was written on October 1, 2007, sent to the health care unit on October 23, and received by the grievance office on November 5, 2007. The grievance officer attached a medical response, dated December 24, 2007, which stated that the HCU Administrator had reviewed Plaintiff's chart, discussed it with his physician, and was advised that Plaintiff had ESRD (end stage renal disease) for which dialysis is "definitely needed." Based on the medical response, the grievance officer completed her review of Plaintiff's grievance on January 2, 2008, and recommended "[n]o further action necessary at this time." The Chief Administrative Officer concurred with this recommendation on January 4, 2008. Plaintiff did not complete the section entitled "Committed Person's Appeal To The Director."

Accepting these facts as true, the question remains whether Plaintiff "properly" used the IDOC's grievance procedure and followed all of the required steps to exhaust his available remedies. See *Dole*, 438 F.3d at 809. Because prison officials eventually responded to Plaintiff's grievance, the next step that Plaintiff should have taken was to file a written appeal with the Director of the IDOC, which Plaintiff did not do. In his complaint and his responses to the Doctor Defendants' motions to dismiss, Plaintiff alleges both that "[n]obody ever responded

---

[6] The Response was attached to Plaintiff's brief in opposition to Dr. Kayira's motion to dismiss. On a Rule 12(b)(6) motion to dismiss, the Court generally must confine its inquiry to the factual allegations set forth within the four corners of the operative complaint. See *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). In the usual case, therefore, if a party moving for a 12(b)(6) dismissal submits documents with its motion to dismiss, the Court either must ignore the documents or convert the motion to one for summary judgment. See Fed. R. Civ. Pro. 12(b); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture*, 987 F.2d at 431. In this instance, Plaintiff, not Defendants, attached documents related to his grievance to both his initial complaint and his response to Dr. Kayira's motion to dismiss. Because these documents are central to Plaintiff's claims in his second amended complaint and to his contention that those claims are viable because he "exhausted all administrative remedies that [were] available to him," the Court may consider the documents in deciding the motions to dismiss.

to [his] grievance" and that he "never received a substantive response to his grievance, nor an opportunity to be heard." Plaintiff maintains that while a copy of the Response may have been in his prison file, one was never given to him, and thus he had nothing from which to appeal. In ruling on a motion to dismiss, the Court must accept as true these allegations. See *Erikson v. Pardus*, 551 U.S. 89 (2007). And under the rule set forth in *Lewis*, a prisoner will be deemed to have exhausted administrative remedies when prison officials fail to respond to an inmate grievance because to find otherwise would "permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." 423 F.3d at 682; see also *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). Thus, at this stage, the Court cannot conclude that Plaintiff failed to exhaust his administrative remedies when he failed to file an appeal.

2. *Sufficiency of Plaintiff's grievance*

The Doctor Defendants next argue that Plaintiff's grievance lacked the requisite level of detail under IDOC regulations. As set forth previously, under the regulations, the grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(b). Plaintiff's grievance states:

> I Ronald Granger was misdiagnosed by medical staff here in Stateville C.C. The H.C.U. maid [sic] an error on me. It cost a disability in my arm and liver and kidney. I was inform by the H.C.U. and M.D. McFadden that I never needed dialysis. The H.C.U. misdiagnosed lab work. Now I have a liver problem from the error that H.C.U. maid [sic] on me.

All three doctors contend that Plaintiff's grievance did not comply with the applicable regulations. Specifically, the Doctor Defendants point to the "Administrative Review Board/Return of Grievance or Correspondence," on which Ms. Benton wrote "your grievance

11

also fails to cite specifics such as dates, when incidents occurred, where, etc.," and argue that Plaintiff was warned by an IDOC official that his grievance lacked the requisite level of detail.

### a. Dr. Kayira

Based on the assertions in Plaintiff's complaint as well as Dr. Kayira's own representations, Dr. Kayira is a physician in the health care unit at Graham Correctional Center. Not only does Plaintiff's grievance fail to name Dr. Kayira, it also fails to mention Graham Correctional Center. In fact, the grievance specifically states that Plaintiff "was misdiagnosed by medical staff here in Stateville C.C." and never references any treatment received at Graham Correctional Center or administered by Dr. Kayira. Additionally, in the section filled out by Plaintiff identifying the "facility where grievance issue occurred," Plaintiff identifies "Stateville C.C." Plaintiff correctly points out that even when a defendant is not named in a prisoner's grievance, he is put on notice if the complaint adequately describes the defendant's position or role in the underlying grievance. See, *e.g.*, *Giampaolo v. Shaw*, 2009 WL 856032, at *8 (C.D. Ill. 2009). However, nothing in Plaintiff's grievance would have notified any official at Graham Correctional Center that Plaintiff had a grievance against him. Regardless of where Plaintiff's alleged improper treatment may have occurred, the only grievance submitted for improper medical care concerned Plaintiff's treatment at Stateville. As such, Plaintiff never initiated, much less exhausted, his administrative remedies against Dr. Kayira, and thus Plaintiff's claim against Dr. Kayira must be dismissed.

### b. Dr. Alausa

In his second amended complaint, Plaintiff alleges that he received medical treatment from Dr. Alausa while Plaintiff was an inmate at Graham Correctional Center (Compl. at ¶¶ 19, 26) and that Dr. Alausa supervised Plaintiff's dialysis treatments (Compl. at ¶¶ 20, 26). In his

response to Dr. Alausa's motion to dismiss, Plaintiff alleges that "Dr. Alausa is a nephrologist (a kidney specialist) who treated Mr. Granger at Graham Correctional Center with dialysis." See Pl.'s Resp. at 3. The only reasonable inference that can be drawn from these allegations is that Dr. Alausa treats inmates at Graham Correctional Center.

Plaintiff argues that there "can be no reasonable dispute that Mr. Granger's grievance alleging the 'medical staff' of improper dialysis included the assigned kidney specialist." *Id*. Presumably, Plaintiff means that because Dr. Alausa is a kidney specialist who treated Plaintiff at some point during his incarceration in the Illinois Department of Corrections, his grievance was sufficient. This Court respectfully disagrees. As with Dr. Kayira, not only did Plaintiff fail to name Dr. Alausa in his grievance, the grievance also failed to identify any individual or action that took place at Graham Correctional Center – and in fact did not even mention Graham Correctional Center. Instead, the grievance specifically stated that Plaintiff "was misdiagnosed by medical staff here in Stateville C.C." Based on Plaintiff's own contentions, Dr. Alausa is a doctor at Graham Correctional Center, not at Stateville, and nothing in Plaintiff's grievance would have notified him – or any other medical or administrative staff at Graham – that Plaintiff had a grievance against them. As previously set forth, the only grievance submitted for improper medical care was regarding treatment at Stateville. Because Plaintiff's Stateville grievance failed to put Dr. Alausa on notice that a prisoner housed at a different institution had a grievance against him, Plaintiff also has failed to exhaust his administrative remedies against Dr. Alausa.

      *c. Dr. McFadden*

Dr. McFadden, a physician who treats inmates at Stateville Correctional Center, is the only provider of medical services whom Plaintiff named in his October 1 grievance. According to the grievance, "M.D. McFadden [informed Plaintiff] that I never needed dialysis. The H.C.U.

13

misdiagnosed lab work. Now I have a liver problem from the error * * *." The manner in which Plaintiff worded the grievance suggests that Dr. McFadden may not have been involved in misdiagnosing Plaintiff, but rather notified Plaintiff of the misdiagnosis. However, the grievance is directed at "medical staff here in Stateville C.C." and identifies Stateville as the "facility where grievance issue occurred." Additionally, the grievance must have contained the requisite level of detail to allow prison officials to investigate the complaint, because officials at Stateville eventually responded to the grievance (and found it to be without merit). Thus, Plaintiff's grievance provided sufficient notice to the medical staff at Stateville, including Dr. McFadden, of Plaintiff's complaint, and Dr. McFadden has failed to meet his burden of demonstrating Plaintiff's failure to exhaust his administrative remedies. See *Conyers*, 416 F.3d at 584.

### 3. Eighth Amendment claim against Dr. McFadden

In Plaintiff's second amended complaint, he alleges that "McFadden [was] aware of the harm caused to Mr. Granger through unnecessary dialysis treatments" and also was "aware of other medical indications and/or conditions which required treatments that Mr. Granger did not receive." Compl. at ¶¶ 34-36. To assert an Eighth Amendment claim, a prisoner must show an objectively serious medical condition and deliberate indifference by a prison official to the serious medical needs of the prisoner. See *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000); see also *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding that prisoner must allege that the prison doctor's response to the prisoner's serious medical needs demonstrates deliberate indifference to the prisoner's serious medical needs). A prison doctor must have subjective knowledge of the prisoner's serious medical condition to "know of and disregard an excessive risk to inmate health." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 1991).

14

Plaintiff has alleged that Dr. McFadden had subjective knowledge of Plaintiff's serious medical condition in that he was aware of the harm caused by the dialysis treatment and was deliberately indifferent to the harm because he continued to order such treatment to Plaintiff's detriment and injury. At this stage, the Court must accept as true the allegations in Plaintiff's second amended complaint, even in the face of Plaintiff's October 1 grievance, which could be read to suggest that Plaintiff was crediting Dr. McFadden with alerting him to a potential complaint rather than alleging that Dr. McFadden himself had caused or contributed to Plaintiff's harm. Therefore, the Court finds that Plaintiff has adequately pleaded the necessary elements of an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical needs against Dr. McFadden, and the Court must deny Dr. McFadden's motion to dismiss.

### III. Conclusion

For the reasons stated above, the Court grants the motions to dismiss [74, 90] filed by Defendants Alausa and Kayira and denies the motion to dismiss [76] filed by Defendant McFadden. The Court also dismisses Plaintiff's claims against Defendants Travis M. Rauch, Gregory Lipe, Leanna Williams, Steven Bryant, and a "Mr. McCluskey" because the Court previously dismissed [31] Plaintiff's claims against those Defendants pursuant to *George v. Smith*, and therefore the claims are no longer viable in this action.

Dated: November 12, 2009 _____
Robert M. Dow, Jr.
United States District Judge